IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SUSAN A. DINGER, | : |
| Plaintiff, | : |
| v. | : Civil No. 1:18-cv-11569-RMB |
| | : **OPINION** |
| NANCY A. BERRYHILL, | : |
| Acting Commissioner of Social Security, | : |
| Defendant. | : |

**BUMB,** United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Susan A. Dinger from a denial of social security disability benefits on February 28, 2017, which was upheld by the Appeals Council on December 12, 2017. [Record of Proceedings "R.P.", p. 19-22, 44-57]. Plaintiff is seeking judicial review of the final determination of the Commissioner of Social Security denying her application for social security disability benefits.

For the reasons set forth below, the Court will vacate the decision of the Administrative Law Judge ("ALJ") and remand this case for proceedings consistent with the Court's reasoning.

I. **Procedural History**

On June 23, 2014, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning August 10, 2010. [R.P., p. 260]. Plaintiff's application was initially denied on September

17, 2014 and again denied upon reconsideration on January 8, 2015. [R.P., p. 155, 172-76]. Plaintiff then requested a hearing which took place on October 20, 2016. [R.P., p. 177-178, 63-95]. During the hearing held before Administrative Law Judge Denise M. Martin, Plaintiff amended her disability onset to August 1, 2011. [R.P., p. 66-67].

On February 28, 2017, the ALJ issued an order denying Plaintiff's claim for social security disability benefits. [R.P., p. 44-57]. Specifically, the ALJ found at Step Three of the five-step sequential analysis that Plaintiff did not have an "impairment or combination of impairments that [met] or medically [equaled] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." [R.P., p. 51-52]. The ALJ enumerated listings 1.02, 1.04, 4.02, 12.04, and 12.06, and provided a single analysis for 12.04 and 12.06, paragraphs (B) and (C).[1] Id. The ALJ did not, however, provide analysis for listings 1.02, 1.04, and 4.02, but stated that she "considered [their] applicability." Id.

The ALJ also found that at Step Five of the five-step sequential analysis that Plaintiff retained the Residual Functional Capacity ("RFC") to perform jobs in the national economy. [R.P., p. 52]. The ALJ stated that:

> [Plaintiff] has the [RFC] to perform "light" work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except for the following: She cannot climb ladders, ropes, or scaffolds, and she can perform no more than occasional climbing of ramps and stairs and occasional balancing, stooping, kneeling, crouching, and crawling. She would need an unskilled, simple, routine, repetitive job with no interaction with the public; only brief and superficial interaction with supervisors and coworkers; and no fast-paced or high production quotas.

---

[1] Paragraphs (B) and (C) under listings 12.04 and 12.06 are identical and require only one analysis. Kerdman v. Colvin, 2014 U.S. Dist. LEXIS 104362, at *25 (D.N.J. July 30, 2014).

Id.[2] Plaintiff filed this appeal on July 12, 2018. [Dkt. No. 1].

## II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

---

[2] "Light work" is defined by the Social Security Administration to "involve[] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR §§ 404.1567(b), 416.967(b).

3

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In <u>Plummer</u>, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. <u>Adorno v. Shalala</u>, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. <u>See</u> 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. <u>See</u> <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984).

**III.     FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was born in 1967 and was 43 years old at the alleged onset date. [R.P., p. 66, 68]. Plaintiff meets the insured status requirement of the Social Security Act through June 30, 2013. [R.P., p. 47].

Plaintiff's relevant employment history includes periods as a cleaner, customer service associate, server, bartender, and store associate. [R.P., p. 281, 296]. Plaintiff claims that she is disabled and unable to work due to a myriad of physical and mental impairments, including but not limited to: spinal disorder; bursitis; joint pain; back pain; thyroid disorder; abnormal heartbeat; anxiety; panic disorder; agoraphobia; insomnia; and depression. [R.P., p. 49-51].

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she most recently left employment as a bartender/waitress because the "driving, the noise, [and] the people" induced panic attacks and anxiety. [R.P., p. 72-73]. Plaintiff also stated that she recently left a position at a school because she was not "leaving [her] house or talking to anybody on the phone" at that point, and that she left a salesclerk position after enduring a particularly severe panic attack. Id.

Plaintiff's anxiety and depression, she attests, often make it difficult for her to think clearly, "like [she has] 50 things going through her head and [she is] losing [] track of stuff … [she cannot] remember yesterday sometimes." [R.P., p. 77-78]. In addition, her anxiety and panic attacks are outside of her control—"they just happen." [R.P., p. 89].

In addition, Plaintiff stated that she has physical ailments that make working difficult. [R.P., p. 74]. Specifically, Plaintiff's back pain inhibits her ability to lift objects

5

over 15 lbs., and that her heartbeat is currently out of sync, which interferes with her ability to converse. [R.P., p. 74-75].

Plaintiff's back pain emanates from her lower ribcage down to her ankles, mostly on the left side. [R.P., p. 82]. This pain, Plaintiff stated, prevents her from walking over a block, standing in one place for more than 10 minutes, and sitting in one place for more than 45 minutes. [R.P., p. 82-84]. Plaintiff affirmed that she can lift about 15 pounds without pain, that she cooks occasionally, and that she can do light cleaning, but cannot vacuum or mop. [R.P., p. 84-85, 93].

### B. Plaintiff's Physical Medical History

On May 6, 2013, Plaintiff presented Dr. Lawrence Neustadter, D.O. with lower back pain. [R.P., p. 487]. Dr. Neustadter conducted x-rays of Plaintiff's spine which showed a mild curve convex to the right and predominately maintained disk spaces with mild degenerative changes. Id.

Dr. David Lunt, M.D. assessed Plaintiff in September 2013 while she was under the care of a psychiatrist and diagnosed her with chronic back pain and depression. [R.P., p. 478].

Plaintiff saw a number of medical professionals in January 2014 for back and shoulder pain. [R.P., p. 493, 444-45, 467, 494] Plaintiff first presented Dr. Victor Frankel, M.D. with lower back pain, which she stated had worsened over the past year. [R.P., p. 493]. Dr. Frankel diagnosed Plaintiff with chronic lumbar strain and sprain and recommended an anti-inflammatory, a muscle relaxer, and a physical therapy program. Id

Soon thereafter, Plaintiff tripped over a concrete parking stump and fell on her shoulder. [R.P., p. 444]. Plaintiff went to Shore Medical Center, where she received

6

medication for a right shoulder contusion. [R.P., p. 445]. Plaintiff then visited Dr. Frankel who assessed Plaintiff to have a tender spasm in the vertebral border of the scapula and the midscappular musculature. Id. Dr. Frankel recommended further physical therapy. Id. The record indicates that Plaintiff began physical therapy around this time but discontinued after a few sessions because she found it "totally ineffectual." [R.P., p. 467, 539].

On October 31, 2014, Plaintiff presented Dr. E. Charles Dunn, M.D with sacral, back, and hip pain, who diagnosed Plaintiff with mild degenerative disk disease and facet degenerative change. [R.P., p. 565-67]. Dr. Dunn reported that Plaintiff had normal gait. [R.P., p. 572].

Plaintiff presented Dr. Arnold Bacarro, M.D. in June 2015, who she began to see regularly thereafter, with increased back pain and numbness in her left extremity. [R.P., p. 618]. Dr. Bacarro reported that Plaintiff had diminished range of motion in her left hip, but normal gait. [R.P., p. 619].

Dr. Bacarro reviewed MRIs of Plaintiff's back and left hip on September 22, 2015 and diagnosed Plaintiff with a herniated disc, a mild disc pathology, and a minimal disc bulge. [R.P., p. 629]. Dr. Bacarro recommended medication and physical therapy. [R.P., p. 630].

In the spring of 2016, Plaintiff presented Dr. Michael Sabia, M.D. with back pain. [R.P., p. 586]. Dr. Sabia assessed Plaintiff with radiculitis, disc displacement, and low back pain, and recommending physical therapy 2-3 times a week and medication. [R.P., p. 591-92].

Plaintiff presented Dr. Bacarro in August 2016 with anxiety that was exacerbated

by heart palpitations. [R.P., p. 647]. Dr. Bacarro noted Plaintiff saw a psychiatrist and assessed her with generalized anxiety disorder, major depressive disorder, and insomnia. [R.P., p. 648]. Dr. Bacarro recommended acid reflux treatment and then a Holter monitor if her palpitations did not improve. [R.P., p. 649].

### C. Plaintiff's Mental Medical History

On August 23, 2012, Plaintiff reported to Dr. George A. Dendrinos, M.D. with anxiety, which had plagued her since her teenage years, that was preventing her from driving, working, and sleeping. [R.P., p. 388]. Dr. Dendrinos recommended Plaintiff medication. Id. Plaintiff followed up with Dr. Dendrinos on September 27, 2012 and December 3, 2012 to discuss new medication. [R.P., p. 387].

Dr. Lewis Lazarus, Ph.D. examined Plaintiff on April 8, 2013 and found Plaintiff to have "mildly compromised" recent and remote memory skills, and "significantly limited" attention and concentration due to her "underlying emotional distress" and "possible learning difficulties." [R.P., p. 396-97]. Dr. Lazarus diagnosed Plaintiff with panic disorder without agoraphobia, major depressive episode, problems with vocational functioning, and a GAF score of 50, and recommended that Plaintiff receive medication and intensive counseling. [R.P., p. 398].

On April 24, 2013, Therapist Melody Pinkney of Millville Outpatient administered Plaintiff's intake evaluation. [R.P., p. 497]. Ms. Pinkney diagnosed Plaintiff with anxiety and depression and reported that she had weekly bouts with anxiety throughout the day and during sleep. [R.P., p. 497]. In addition, Ms. Pinkney diagnosed Plaintiff with panic disorder with agoraphobia and depressive disorder not otherwise specified. Id. Ms. Pinkney's examination further showed that Plaintiff was cooperative

8

and goal-directed, and that her thought process and thought content were within normal limits, but that she was depressed. [R.P., p. 504-06]. Ms. Pinkney recommended group therapy to manage anxiety for 10 sessions, which Plaintiff agreed she wanted to try. [R.P., p. 507].

Plaintiff saw Dr. Randall Pitone, M.D. in June 2013 for anxiety, who she began seeing regularly for issues relating to her anxiety, depression, and panic attacks thereafter. [R.P., p. 495, 509]. Dr. Pitone noted that Plaintiff was pleasant and cooperative and diagnosed Plaintiff with panic disorder with agoraphobia and depressive disorder, and tellingly, moderate employment issues which leave her "unable to work and be self-supporting due to severity of current illness." [R.P., p. 510-11].

Plaintiff presented Dr. Pitone in September 2013 with severe anxiety, who assessed Plaintiff with panic disorder and depressive disorder and recommended medication. [R.P., p. 521-22]. In November 2013 and March 2014, Plaintiff presented Dr. Pitone with anxiety and depression in a calm, pleasant, and cooperative manner. [R.P., 517, 519-20]. In both sessions, Dr. Pitone assessed Plaintiff to have depressive disorder not otherwise specified and panic disorder with agoraphobia and recommended medication, counseling, and therapy. [R.P., p. 517-20].

On May 8, 2014, Dr. Pitone opined that while she presented herself calm, pleasant, and cooperative, "[Plaintiff] is unable to work at this time and [he anticipated] that [Plaintiff] will not be able to work for at least one year." [R.P., p. 495, 513]. Dr. Pitone verified that Plaintiff received more than one treatment at his place of work, the Cumberland County Guidance Center. [R.P., p. 495]. Dr. Pitone assessed Plaintiff with major depression, panic disorder with agoraphobia, and hypothyroidism. [R.P., p. 513].

9

Plaintiff presented Dr. Pitone in July 2014 with significant limitations in her level of function due to her anxiety and panic attacks. [R.P., p. 513]. Dr. Pitone assessed Plaintiff with major depression, panic disorder with agoraphobia, hypothyroidism, and chronic hip pain. Id. Dr. Pitone recommended medication to reduce anxiety and relayed the importance of utilizing all available resources. [R.P., p. 514].

On September 8, 2014, Plaintiff reported to Dr. Lawrence Seifer, Ph.D. for a psychological evaluation. [R.P., p. 525-27]. Dr. Seifer noted that Plaintiff was polite and cooperative but anxious. Id. Dr. Seifer assessed Plaintiff's memory as adequate and that her "moderate limitations are due to a combination of the physical and mental status [she] appear[s] to be enduring." Id. Dr. Seifer diagnosed Plaintiff with dysthymic disorder, panic disorder with agoraphobia, and a GAF score of 55. Id.

State agency consultant, Dr. Sharon Flaherty, Ph.D., reviewed Plaintiff's impairments at the initial level on September 15, 2014 and considered Plaintiff "markedly limited" in her "ability to understand and remember detailed instructions" and "markedly limited" in her "ability to carry out detailed instructions." [R.P., p. 103]. In addition, she considered Plaintiff "markedly limited" in her "ability to travel in unfamiliar places or use public transportation. [R.P., p. 104].

On September 18, 2014, Plaintiff saw Dr Pitone for anxiety, panic attacks, and depression. [R.P., p. 531]. Specifically, Plaintiff stated that "going back to work scares [her]," that "[she] [does not] like people behind [her]," and that she is "afraid of being a position that [she] [is] going to embarrass [herself]." Id. Dr. Pitone diagnosed Plaintiff with generalized anxiety disorder, panic disorder without agoraphobia, moderate occupational problems, and a GAF score of 51. Id.

On November 11, 2014, Plaintiff presented Dr. Samuel Wilchfort, M.D. with anxiety disorder and panic attacks. [R.P. p. 561]. Dr. Wilchfort noted that Plaintiff was hostile and angry, and that she acted inappropriately during the examination. [R.P., p. 561-62]. Dr. Wilchfort recommended that Plaintiff get a psychiatric evaluation. Id.

State agency consultant, Dr. Sallye M. Wilkinson, Ph.D., reviewed Plaintiff's medical history upon reconsideration on November 19, 2014. [R.P., p. 130]. Dr. Wilkinson, similar to Dr. Flaherty, found Plaintiff to have "marked difficulties" in her ability to understand and remember detailed instructions, and in her ability to travel to unfamiliar places or use public transportation. [R.P., p. 132].

On December 8, 2015, Family Service Association clinician, Kerry Sellars, LSW, discharged Plaintiff due to lack of contact. [R.P., p. 582]. Ms. Sellars noted that Plaintiff participated in 14 sessions with a therapist and 6 sessions with a previous therapist and assessed Plaintiff with generalized anxiety disorder. Id.

### D. Vocational Expert

The vocational expert testified that an individual limited to light work, with no interaction with the public, and only brief and superficial interactions with supervisors and co-workers could work in the national economy as a cleaner/polisher, labeler, and housekeeping/cleaner. [R.P., p. 91-92]. In addition, the vocational expert testified that an individual with such an RFC would be able to perform the sedentary jobs of document preparer, addresser, and circuit board assembler. [R.P., p. 92].

The vocational expert testified that a person limited to brief and superficial interactions with supervisors and co-workers could not work in the national economy if she could not control when she became afflicted by psychiatric symptoms and needed

11

total control over those interactions. [R.P., p. 93]. The vocational expert also testified that such an individual would not be able to work if she would be absent four days per month due to psychiatric impairments and the required treatment. Id.

## IV. **ALJ'S DETERMINATION**

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the relevant time period. [R.P., p. 57]. Upon consideration of the evidence of record and Plaintiff's testimony at the hearing, the ALJ determined that Plaintiff had the RFC to work in the national economy. [R.P., p. 56-57].

At Step One, the ALJ found the "[Plaintiff] has not engaged in substantial gainful activity since August 1, 2011. [R.P., p. 49]. At Step Two, the ALJ found that the "[Plaintiff] has the following severe impairments: spinal disorder; bursitis; joint pain; anxiety; panic disorder; and depression." Id.

At Step Three, the ALJ found that the "[Plaintiff] does not have impairment or combination of impairments that meets or medically the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" [R.P., p. 51]. Specifically, the ALJ analyzed whether Plaintiff's impairments met or medically equaled the severity of listings 12.04, "Depressive, bipolar and related disorders" and 12.06, "Anxiety and obsessive-compulsive disorders." Id.[3] In addition, the ALJ stated that she considered listings 1.02, 1.04, and 4.02, but did not include a discussion of these listings or a rationale as to why they were not met. Id.

The ALJ analyzed whether Plaintiff met two or more of the following

---

[3] See Social Security Administration Program Operations Manual System ("POMS") DI 132.009, *Mental Listings from 12/18/07 to 09/28/16*, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132009.

impairments under listings 12.04(B) and 12.06(B), which are identical: (1) marked difficulties in understanding, remembering, or applying information; (2) marked difficulties in interacting with others; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) marked difficulties in adapting or managing oneself. Id. The ALJ ultimately concluded that Plaintiff exhibited "moderate difficulties" for each of the impairments. Id. The ALJ did not explain her reasoning behind the "moderate" designation, but alluded to "a far more detailed analysis of [Plaintiff's] symptoms in the following section" and that she gave substantial weight to the consultative assessments by Drs. Lazarus and Seifer. [R.P., p. 51-52].

Next, the ALJ concluded, without reasoning or explanation, that Plaintiff did not meet criteria for listings 12.04(C) or 12.06(C) because"[t]here is no indication that [Plaintiff] has only marginal adjustment—that is, minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of the [Plaintiff's] daily life." [R.P., p. 52]. At Step Four, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." [R.P., p. 55].

At Step Five, the ALJ concluded that Plaintiff had the RFC to perform "light" work, except that:

> She cannot climb ladders, ropes, or scaffolds, and can perform no more than occasional climbing of ramps and stairs and occasional balancing, stooping, kneeling, crouching, and crawling. She would need an unskilled, simple, routine, repetitive job with no interaction with the public; only brief and superficial interaction with supervisors and coworkers; and no fast-paced or high production quotas.

[R.P., p. 52].

With respect to Plaintiff's physical impairments, the ALJ relied on Plaintiff's own treating sources, Drs. Bacarro, Mr. Waterman, MPT, Dr. Yocom, and Dr. Wilchfort, and

13

found the consultative assessments by Drs. Lazarus and Seifer to be instructive. [R.P., p. 52-54]. The general findings of these sources, as the ALJ stated, suggest that "[Plaintiff's] activities are seriously hampered by pain," but that Plaintiff is not as limited as she alleged. [R.P., p. 52-55].

With respect to Plaintiff's psychological impairments, the ALJ relied heavily on the consultative assessments of Drs. Lazarus and Seifer, who opined that Plaintiff's thought process was "coherent and goal-directed," that she was "independent with dressing, bathing, and grooming," and that she would be able to "manage money." [R.P., p. 53-54]. The ALJ, however, did not note Dr. Lazarus's assessment that Plaintiff's "[a]ttention and concentration during the examination were [] quite significantly limited due in part to her underlying emotional distress but also possible learning difficulties." [R.P., p. 397]

In addition, the ALJ discussed treatment notes from the Family Service Association in December 2015 that indicated that Plaintiff's panic attacks had decreased in severity with treatment. [R.P., p. 54].

The ALJ provided "great weight" to the assessments provided by the state Disability Determination Services consultants. [R.P., p. 55]. The ALJ did not reference or discount assessments by state agency consultants, Drs. Flaherty and Wilkinson, that Plaintiff was "markedly limited" in understanding and remembering detailed instructions, carrying out detailed instructions, and traveling in unfamiliar places or using public transportation. [R.P., p. 131

The ALJ specifically discounted the opinion of Dr. Pitone, who wrote in May 2014, that Plaintiff would be unable to work for at least one year. [R.P., p. 55]. The ALJ

14

reasoned that Dr. Pitone's opinion was "cursory and wholly lacking justification … too perfunctory, unsupported, and inconsistent with other evidence" and that "there is no indication that Dr. Pitone is an expert in vocational matters or even the definition of disability used in the Social Security Act." [R.P., p. 55] (quotations omitted). The ALJ did not reference or discount Dr. Pitone's July 2013 note that Plaintiff was "unable to work and be self-supporting due to severity of [her] current illness." [R.P., p. 511].

## V. ANALYSIS

On appeal, Plaintiff asserts five arguments. Plaintiff first argues that the ALJ erred at Step Three by failing to provide an explanation as to why she did not meet or medically equal listings 1.02, 1.04, or 4.02 contrary to Burnett v. Commissioner, 220 F.3d 112 (3rd Cir. 2000) and Farnogli v. Halter, 247 F.3d 34 (3rd Cir. 2001). [Dkt. No. 10]. Second, Plaintiff argues that the ALJ erred for failing to explain why she designated Plaintiff's mental impairments as "moderate" for 12.04(B) and 12.06(B), and third, that the evidence of record shows that she should have been designated as having "marked" impairments. Id.

Fourth, Plaintiff argues that the ALJ erred at Step Five by including in Plaintiff's RFC that she is to have "only brief and superficial interaction with supervisors and coworkers," because such a limitation is impractical in real-world work environments. Id. Last, Plaintiff asserts that the ALJ failed to account for the vocational expert's statement that no jobs exist in the national economy for an employee who would need total control over these brief and superficial interactions with supervisors. Id.

In response, the Commissioner first argues that the ALJ sufficiently developed the record by enumerating the listings under review, as required by Burnett v. Comm'r of

Soc. Sec. and Jones v. Barnhart, and the evidence of record clearly shows that Plaintiff does not meet listings 1.02, 1.04, and 4.02. [Dkt. No. 13]; 200 F.3d 122 (3rd Cir. 2000) and 364 F.3d 501, 505 (3rd Cir. 2004). In addition, the Commissioner argues that the evidence of record shows that Plaintiff's mental impairments do not meet or medically equal the criteria set forth in listings 12.04 and 12.06. [Dkt. No. 13].

The Commissioner also argues that the ALJ did not err at Step Five by including in the Plaintiff's RFC the limitation of brief and superficial interactions because the vocational expert clearly indicated that both the supervisor and employee would dictate when that interaction occurs, and that the evidence of record shows that Plaintiff can handle brief and superficial interactions. [Dkt. No. 13].

The Third Circuit has instructed ALJs to "fully develop the record" and to "explain[] their findings in sufficient detail to allow [the Third Circuit] to conduct meaningful judicial review." Melvin v. Comm'r of Soc. Sec., 226 F. App'x 126, 129 (3rd Cir. 2007) (citing Burnett, 200 F.3d at 119-20 (quotations omitted)). The ALJ need not adhere to a particular format for a reviewing court to conduct meaningful judicial review, but meaningful judicial review cannot be conducted where an ALJ makes a conclusory statement that a claimant is not disabled within the Social Security Act without an explanation or a synopsis of findings. T.C. v. Comm'r of Soc. Sec., 497 Fed. App'x 158, 162 (3rd Cir. 2012).

While an ALJ is not required to cite to all evidence a claimant presents, she may not reject pertinent or probative conflicting evidence without explanation. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3rd Cir. 2008) (citing Burnett, F.3d at 121 and Cotter v. Harris, 642 F.2d 700, 705-07 (3rd Cit. 1981). When conflicting evidence exists

within the record, the ALJ "may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Plummer v. Apfel, 186 F.3d 422, 429 (3rd Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3rd Cit. 1993) quotations omitted)).

In this case, the ALJ concluded that Plaintiff did not have "marked difficulties" in any of the four abilities under listings 12.04(B) and 12.06(B). [R.P., p. 51]. While the ALJ fully developed the record so as to allow the Court to conduct meaningful judicial review, the ALJ failed to explain her reasons for apparently discounting evidence that is incongruent with her decision. Specifically, the ALJ failed to reference or explain her reasons for discounting the assessments by state agency consultants, Drs. Flaherty and Wilkinson, that Plaintiff was "markedly limited" in the following abilities: understanding and remembering detailed instructions, carrying out detailed instructions, and traveling in unfamiliar places or using public transportation. [R.P., p. 131]. While the ALJ retained the discretion to provide significant, little, or no weight to these assessments, she was required to explain her reasons for doing so.

In addition, the ALJ failed to reference or explain her reasons for discounting evidence that Plaintiff was not cleared to work by her treating physicians. On July 19, 2013, Dr. Pitone diagnosed Plaintiff with panic disorder with agoraphobia and depressive disorder not otherwise specified and commented under "Employment Issues" that Plaintiff was "unable to work and be self-supporting due to severity of [her] current illness." [R.P., p. 511]. Indeed, this diagnosis supports Dr. Pitone's May 2014 opinion that Plaintiff could not work for at least one year, which, tellingly, the ALJ called "unsupported, and inconsistent with other evidence." [R.P., p. 55]. Again, while the ALJ was free to discount Dr. Pitone's July 2013 assessment, she was required to explain why.

17

Finally, the ALJ failed to reference or explain her reasoning for discounting evidence by Dr. Lazarus that Plaintiff's "*[a]ttention and concentration* during the examination were noted to be *quite significantly limited* due in part to her underlying emotional distress but also possible learning difficulties." [R.P., p. 397] (emphasis added). Such a statement is certainly probative, which is amplified by the fact that the ALJ found Dr. Lazarus's assessment "particularly instructive," [R.P., p. 54] and inconsistent with a finding that Plaintiff had only "moderate difficulties" in interacting with others and maintaining concentration, persistence, or pace.

Because the ALJ failed to consider probative and conflicting evidence in the Step Three analysis regarding the severity of Plaintiff's work-related issues, the Court will vacate the ALJ's decision and remand this case for further consideration.

The ALJ's omission of Drs. Flaherty and Wilkinsons' assessments that Plaintiff had "marked limitations" in some work-related functions also warrants remand on Step Five. This evidence is probative and inconsistent with the ALJ's determination, and its contemplation is necessary.

Indeed, the incorporation of this evidence could prove tantamount to a finding of "disability" under the Social Security Act. As other circuit courts and district courts within the Third Circuit have considered, a "brief and superficial" limitation within an individual's RFC is consistent with "moderate" work limitations. See generally, Washington v. Soc. Sec. Admin., 502 Fed. App'x 881, 883 (11th Cir. 2013); Seamon v. Astrue, 364 Fed. App'x 243, 248 (7th Cir. 2010); Pidgeon v. Colvin, 2016 U.S. Dist. LEXIS 61435, at *13 (D.N.J. May 9, 2016). The "marked difficulties" that Plaintiff has in understanding, remembering, and carrying out detailed instructions, per Dr. Wilkinson,

may eviscerate Plaintiff's current RFC that she can have "brief and superficial" interactions with supervisors. Therefore, the Court also vacates the ALJ's determination at Step Five that Plaintiff had the RFC to work in the national economy.

## VI. CONCLUSION

For the reasons set forth above, the ALJ's Order denying Plaintiff social security disability benefits will be vacated and this case will be remanded for further proceedings. An appropriate order shall issue on this date.

Date: June 11, 2019                      ___s/ Renée Marie Bumb_____
                                                       RENÉE MARIE BUMB
                                                       UNITED STATES DISTRICT COURT